## UNITED STATES v. CERTAIN LANDS SITUATE IN KANSAS CITY, JACKSON COUNTY, MISSOURI, et al.

### No. 1465.

District Court, W. D. Missouri, W. D.

May 20, 1946.

Morgan M. Moulder, Sp. Asst. to the U. S. Atty., of Kansas City, Mo., for plaintiff.

Lester McRoberts, of Kansas City, Mo., for defendants.

REEVES, District Judge.

Defendants seek additional damages by reason of the appropriation by the government under eminent domain. The original appropriation was made in the year 1943. A final judgment was entered on June 24, 1944. The appropriation by the government and the condemnation of the property was brought about through military necessity and the final judgment awarding damages was in accordance with the stipulation of the parties. The uses of the government were for the occupancy by the military authorities of property formerly used by the defendants for hotel purposes. The military occupancy was but temporary although the period could not be foreseen. In determining damages, current alterations and changes were foreseen and taken into account. The option of the government for a renewal of its occupancy which ran from year to year was also considered and a fixed annual rental was determined and agreed upon. It was stipulated between the

parties, in substance, that the damages, if any, accruing to the property by reason of military occupancy, could not be foreseen, and, therefore, the ascertainment thereof at the time of the taking would be purely conjectural. Anticipating possible, and, it seems, probable damages, it was agreed between the parties that the court should retain jurisdiction until termination of the government's occupancy, and, then, in a proper proceeding, ascertainment of the extent of such damages, if any, might be made. In that regard, the stipulation filed June 20, 1944 contained the following language: "Now, Therefore, it is hereby stipulated and agreed by and between the above named parties that judgment shall be entered in said cause * * * against the Petitioner in the amount of $13,021.74, * * * as just compensation for the taking of an estate for a term of years ending June 30, 1944, including rugs, and including any and all damages or claims of any nature arising out of the condemnation proceeding or the use of said premises by the Government for said term except such claim as may arise by reason of any major structural changes made by the Petitioner in the building located upon said land and which would render the building less suitable for the purposes for which the same was being used by Defendants as of the time of the filing of said condemnation petition, * * *."

The stipulation further provided for a renewal from year to year after June 30, 1944, at an annual rental of $7,725.12, and then the stipulation provided for a release by the defendants of: "* * * any and all claims for restoration of the premises except such future major structural changes, and upon a failure of the parties to agree concerning same that the same may be determined according to law."

The final judgment in all respects conformed to the stipulation and was filed in court on the same date, towit, June 20, 1944, and preserved to the parties the right in this proceeding to adjust in the future any damage claims. The reservation was as follows: "6 * * * (d) In the event that Petitioner, during its occupancy, shall make any future major structural change or changes in the premises that render the building less suitable for the uses to which it was being put at the time of the Taking, then Petitioner shall, at the time of the surrender of the premises to the Owners, pay the Owners a reasonable sum on account thereof. If the parties are unable at that time to agree upon such sum, the same may be determined according to law."

The final judgment or decree then contained the following significant reservation of jurisdiction: "6 * * * (e) * * * The Court retains plenary jurisdiction to make additional and modifying orders as to future distributions to the persons entitled thereto in the event it is made to appear to the court that the interests and rights of the parties shall have been altered."

The government continued to occupy the premises until March 31, 1946. As a preliminary to the surrender of the premises by the government to the defendants a stipulation was entered into on March 20, 1946. By the stipulation certain adjustments were made on rentals paid in advance and the date for the surrender of the premises was agreed upon. This was March 31, 1946.

After covering all matters appertaining to rentals and the surrender of the property, the parties further agreed as follows: "* * * however, it is hereby expressly understood and agreed that this stipulation shall not affect nor prejudice petitioner or defendants of their respective legal or equitable claims, causes of action or defense, if any, which either party may have against the other, in the above entitled action if jurisdictional therein, or by separate cause of action in any other court or tribunal, as provided by law."

The motion of the defendants in this supplemental proceeding contains appropriate recitals with respect to the original proceedings and the stipulations of the parties. As a predicate for their motion the defendants say: "During petitioner's occupancy it made major structural changes in said premises that adversely affected the value of the property for the use to which it was being put at the time of the taking, and petitioner has made changes in said premises that have damaged same

and adversely affected its value as a hotel, so that said premises are now totally unsuitable for the use to which it was being put at the time of the taking, in that during said occupancy the petitioner did remove all the wallpaper from all seventy-five (75) rooms, and the five (5) floors, hallways and staircases, and colored all the wall surfaces with a peculiar and unknown color and substance and removed or broke the plaster from the ceilings and placed iron bars upon many of the windows of said building, all of which has rendered said premises totally unsuitable for use as a hotel."

The defendants estimate their damages at $9,850. They aver that the petitioner has refused to comply with their demands for compensation for such damages, and, hence, this motion.

The questions for decision are: (a) Whether this court has jurisdiction to determine the alleged damages in the original proceeding; (b) if so, whether the usual procedure of appointing commissioners should be followed for the purpose of ascertaining the damages, if any, and, upon exception by either or both of the parties, award a jury for the trial of the issues; (c) or whether the questions involved should be determined in an original proceeding. These will be considered.

1. It is obvious from the stipulation of the parties and from the original judgment that the probability of additional damages was in contemplation. The parties undertook to meet such a situation by providing, in effect, for the retention of jurisdiction of the court for the ascertainment of such damages. Moreover, the final judgment of the court retained "plenary jurisdiction to make additional and modifying orders * * * in the event it is made to appear to the court that the interests and rights of the parties shall have been altered."

While this retention of jurisdiction is not as explicit as it might be, yet, in view of the stipulation with respect to future damages, the court undoubtedly had in mind in its judgment to ascertain damages as contemplated in the stipulation. The stipulation and the judgment should be read together. They were filed together. Any ambiguity of the judgment should be resolved in the light of the express stipulation of the parties. It was the duty of the court to enter a judgment that would carry out the express contract of the litigants. The court retained jurisdiction for some purpose, and there is no reason why the damages named, having been anticipated and being somewhat consequential in their nature, should not now be determined in this proceeding. No harm could come to the parties by proceeding in this way. Moreover, it would expedite the administration of justice. This reasoning is supported by the thought that there is no provision in the law at present for the defendants to bring an independent suit against the government for recovery of damages. The defendants should not be relegated to the Court of Claims. These doubtless were considerations that prompted the retention of jurisdiction.

2. Furthermore, the Department of Justice, by Circular No. 3534, Bulletin No. 34, dated June 22, 1945, directed:

"To United States Attorneys and Field Attorneys of the Lands Division Engaged in the Acquisition of Land

Re: United States v. General Motors Company, decided by the Supreme Court January 8, 1945." (323 U.S. 373, 65 S.Ct. 357, 156 A.L.R. 390, 89 L.Ed. 311, stated as follows:

"The Government contends that when it is not definitely known whether the property will be returned to the owner in the same physical condition in which it was at the time of the taking, * * * the ascertainment and payment of just compensation for the demolition or destruction of improvements or for physical damage must await the time of the return of the property to the condemnee. This contention is based on the well established rule that compensation is not allowable for damages that are speculative and conjectural. Where these circumstances exist the court should be requested to hold the condemnation proceeding open for the determination of just compensation for any failure of the Government to restore the property at the

time of the surrender of the property to the condemnee.[1] "

" 1 * * * Hereafter, the policy will be that damages accruing as a result of the Government's occupancy of property shall be determined in the condemnation case and no objection should be made to the court retaining jurisdiction in these cases for that purpose."

Quite clearly it is now the desire of the government to ascertain damages, under the circumstances here present, in the original proceeding.

3. As heretofore indicated, it is doubtful whether the defendants would have a right to institute an independent and original proceeding for recovery of their claimed damages. It would be burdensome and expensive to present their demands to the Court of Claims or to secure compensation by an original appropriation of Congress.

Both upon authority and reason, and conformable to the present attitude of the government, the questions presented should be resolved here.

4. Since this is a condemnation proceeding the procedure outlined by law should be followed: Three commissioners should be appointed to view the premises and assess and award such damages, if any, that may have accrued in favor of the defendants. The parties, upon exception to the award made by the commissioners, if any, may seek an award by jury. Such procedure will be followed. The parties are requested to agree upon commissioners or to make recommendations to the court for suitable appointments.

5. If any question should arise as to the sufficiency of the motion with respect to the meaning of structural changes, the following appears to be a sound and acceptable definition: " 'Structural change' is such a change as to affect a vital and substantial portion of the premises, as would change its characteristic appearance, the fundamental purpose of its erection, or the uses contemplated, or a change of such a nature as would affect the very realty itself—extraordinary in scope and effect, or unusual in expenditure. Paye v. City of Grosse Pointe, 279 Mich. 254, 271 N.W. 826, 827; * * * Plaza Amusement Co.

v. Rothenberg, 159 Miss. 800, 131 So. 350, 357." Vol. 40, Words and Phrases, Perm. Ed., p. 321.