Nathan LANDOW

v.

Honorable Gerald P. CARMEN, et al.

Civ. No. Y–82–1520.

United States District Court, D. Maryland.

Jan. 7, 1983.

J. Theodore Wieseman, Rockville, Md., and Jeffrey L. Squires, Washington, D.C., for plaintiff.

Sylvia Sepulveda-Hambor, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiff Nathan Landow brought this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Quiet Title Act, 28 U.S.C. § 2409a, seeking a declara-

tion that defendant United States is not entitled to remain in possession of certain commercial office space. The United States moved to dismiss for lack of subject matter jurisdiction. After careful consideration of the memoranda filed by the parties, the Court concludes that this suit is not cognizable under the Quiet Title Act and, therefore, the United States' motion to dismiss must be granted.

FACTS

On July 24, 1972, Landow and the United States entered into a lease agreement. Under the agreement, the United States leased approximately 100,000 square feet in the Landow Building, a commercial office building located in Bethesda, Maryland, for a ten year term from November 1, 1972 to October 31, 1982.

The lease agreement gives the United States the option to renew the lease for two five-year terms at stipulated rental rates provided that the United States gives written notice of its intention to renew the lease. Landow contends that the lease requires 180 days written notice for renewal. The United States contends that the lease requires only 90 days written notice. The United States gave written notice of renewal on June 16, 1982, 137 days prior to the expiration date of the lease.

Landow brought this suit alleging that because of the United States' failure to give written notice of renewal 180 days before the end of the lease, the United States has waived or forfeited its rights to remain in possession of the Landow Building after October 31, 1982. As an alternative ground why the United States should be declared to have waived or forfeited its rights to remain in possession of the Landow Building, Landow alleges that the United States breached the lease agreement by causing extraordinary damage and interfering with the rights of other Landow Building tenants.

THIS SUIT IS NOT COGNIZABLE UNDER THE QUIET TITLE ACT

■ A party who institutes a claim against the United States has the burden of alleging an act of Congress which autho-rizes the Court to entertain that claim. *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *Thompson v. United States,* 250 F.2d 43 (4th Cir.1957); *United States v. Drinkwater,* 434 F.Supp. 457, 460 (E.D.Va.1977). In his complaint Landow alleges that subject matter jurisdiction is founded upon 28 U.S.C. §§ 1346(f) and 2409a. § 1346(f) provides:

The district courts shall have exclusive jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

§ 2409a provides:

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to ... or affect actions which may be or could have been brought under sections 1346 ... of this title [the Tucker Act]...

Thus, in ruling on the United States' motion to dismiss for lack of subject matter jurisdiction, the Court is confronted with the question whether the instant suit is a "civil action ... to adjudicate a disputed title to real property in which the United States claims an interest." Specifically, since both parties agree that the United States' leasehold interest is "real property in which the United States claims an interest," *United States v. Bedford Associates,* 657 F.2d 1300, 1316 (2nd Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982), the narrow question before the Court is whether a dispute about the terms of a lease agreement constitutes a title dispute for purposes of the Quiet Title Act.

■ In considering the issue in this case, the Court is reminded of the colloquy between Alice and Humpty Dumpty in Carrolls' "Through the Looking Glass." Questioned about the meaning of a word the response was "when I use a word, it means just what I choose it to mean—neither more nor less." While the word "title" is not

entirely free of ambiguity, *see Dover Veterans Council, Inc. v. Dover,* 119 N.H. 738, 407 A.2d 1195, 1196 (1979), the Court need not "choose" a meaning but holds that, in keeping with the generally accepted legal definition of the word, "title" as used in the Quiet Title Act connotes an ownership interest. *See Blacks' Law Dictionary* 1331 (rev. 5th ed 1979) ("The right to or ownership in land"); 41A *Words and Phrases,* "Title to Real Estate," (1965 & 1982 pocket part). Consequently, where, as here, the only dispute between the parties concerns the terms of a lease agreement which does not call into question the ownership of real property, there is no jurisdiction under the Quiet Title Act. *Cf. Sunray Dix Oil Co. v. Lewis,* 426 S.W.2d 44, 49 (Mo.1968) (a lease dispute is not a case "involving . . . the title to real estate" as that phrase is used in the Missouri Constitution).

The Court's holding that "title" as used in the Quiet Title Act connotes ownership is supported by the well-established proposition of statutory construction that waivers of sovereign immunity are strictly construed. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); *Fulcher v. United States,* 696 F.2d 1073 (4th Cir.1982) (Quiet Title Act case). Accordingly, "any doubts as to consent or jurisdiction of the court should be resolved in favor of the United States." *Shinaberry v. United States,* 142 F.Supp. 413, 414 (W.D.Mich.1956), *aff'd,* 242 F.2d 758 (6th Cir.1957), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957).

Moreover, the Court's holding is fully consistent with the legislative history and case law on the Quiet Title Act. It is significant that the only reference to a disputed leasehold interest in the legislative history is in the context of an ownership dispute between the United States' lessor and a third party:

If the United States were in possession under a lease, and the *title* of the Government's lessor were adjudicated to be invalid, the United States could elect to continue its lease with the true *owner.*

Letter from Attorney General to Speaker of the House accompanying H.R.Rep. No. 92–1559, 92d Cong., 2d Sess. (1972), *reprinted* in 1972 U.S.Code Cong. & Ad.News 4547, 4555 and S.Rep. No. 92–575, 92d Cong., 1st Sess. (1971) (emphasis added). This reference not only equates "title" with "ownership," but, considered with the fact that it is the only reference to a lease in the legislative history, strongly suggests that leasehold disputes not involving ownership disputes are outside the scope of the Quiet Title Act. *Accord Bedford Associates, supra.* Another telling passage in the legislative history is the statement that "Perhaps the most common application of the proposed statute would be in boundary disputes between the United States and owners of an adjacent property." 1972 U.S.Code Cong. & Ad. News 4547, 4552. Surely, if Congress intended that the Quiet Title Act would give federal courts jurisdiction to decide disputed lease agreements involving the United States, then the legislative history of the Act would have made greater reference to lease disputes which must be at least as common as boundary disputes.

Although there are many reported cases on the Quiet Title Act, this Court is not aware of any case holding that a dispute about a non-ownership interest is sufficient to confer Quiet Title Act jurisdiction. Indeed, many courts, including the Fourth Circuit, have equated the requirement of a disputed title with disputed ownership. *See, e.g., Fulcher v. United States,* 632 F.2d 278 (4th Cir.1980); *Key v. Wise,* 629 F.2d 1049, 1067, n. 12 (5th Cir.1980) (winner of a Quiet Title Act suit is a prevailing "landowner"); *Amoco Production Co. v. United States,* 619 F.2d 1383, 1387 (10th Cir.1980) (proper to look to state law because "ownership" questions have traditionally been resolved by state law); *Prater v. United States,* 618 F.2d 263 (5th Cir.1980); *Kinscherff v. United States,* 586 F.2d 159, 160 (10th Cir.1978) (members of the public do not have title in public roads because they do not have any "ownership" interest in the roads); *King v. United States,* 585 F.2d 1213 (4th Cir.1978); *Sault Ste. Marie v.*

*Andrus,* 458 F.Supp. 465, 471–72 (D.D.C. 1978); *Hatter v. United States,* 402 F.Supp. 1192 (E.D.Cal.1975). In fact, in *Ginsberg v. United States,* No. 81–0707–A (E.D.Va. November 20, 1981), *appeal docketed,* No. 82–1088 (4th Cir. argued October 5, 1982), the court, in dismissing plaintiff's complaint for lack of subject matter jurisdiction, stated that the Quiet Title Act does not provide a jurisdictional basis for a suit to determine whether a "lease has been breached or not."

Lastly, the fact that the Quiet Title Act expressly states that it "does not apply to or affect actions which may be or could have been brought under" the Tucker Act, 28 U.S.C. § 1346, provides further support for the Court's holding that disputed lease agreements are not covered by the Quiet Title Act. The Tucker Act, which permits contract suits against the United States, has been held to confer jurisdiction on federal district courts and the Court of Claims to adjudicate disputed lease agreements. *See, e.g., Chernick v. United States,* 372 F.2d 492, 178 Ct.Cl. 493, (1967); *Philips v. United States,* 206 F.2d 867 (9th Cir.1953); *Boccardo v. United States,* 341 F.Supp. 858 (N.D.Cal.1972); *Carroll v. United States,* 229 F.Supp. 891 (W.D.Ark.1964); *Patton v. United States,* 139 F.Supp. 279 (N.D.Pa. 1955). Thus, since the Quiet Title Act does not apply to suits that may be brought under the Tucker Act and the Tucker Act covers disputed lease agreements, then the Quiet Title Act, by its own express terms, does not confer jurisdiction on federal courts to adjudicate disputed lease agreements.

For the reasons stated herein, it is this 7th day of January, 1983, by the United States District Court for the District of Maryland, ORDERED:

That defendant's motion to dismiss for lack of subject matter jurisdiction BE, and the same IS, hereby GRANTED.